Case number 20-3599 Michael Wood v. Chad Eubanks et al. Oral argument is not to exceed eight minutes for the plaintiff, seven minutes for the amicus, and 15 minutes for the defendants. Mr. Carey, you may proceed for the amicus. Thank you. Good morning. May it please the court, may it please the court, my name is David Carey and I represent the amicus party of the ACLU of Ohio. I'll be taking the first seven minutes of appellant's time to discuss two issues, the first amendment protection of Mr. Wood's speech and how the district court got that wrong by deferring to state case law in the probable cause analysis on a constitutional question. Ms. Coulter will be discussing qualified immunity and the remaining elements of Mr. Wood's retaliation claim and she'll be reserving one minute for rebuttal. So I'll start with the first amendment question. Under federal precedent, which controls this question, Mr. Wood's speech did not constitute fighting words. Now the fighting words exception is always narrowly construed, but three aspects of this case limit it even further. First, that the great majority of his speech was addressed to police officers. Second, much of his speech involved substantive criticisms of public officials. And third, the context of his speech made a violent outcome far less likely. So I'll cycle through those points briefly. So with regard to speech to police, law enforcement officers are sworn to uphold the law. They are trained and they are expected not to respond to insults with violence. And as a result, the Supreme Court raised the bar for fighting words in the context of speech to police in City of Houston versus Hill. And this court has followed suit numerous times. So for example, Green versus Barber. In that case, a man stood in the middle of a police station lobby and called a police lieutenant a profane name, insulted his intelligence, loudly enough to disturb people who were standing 60 feet away, loudly enough to cause nearby receptionists to place calls on hold. That was protected speech. That was clearly established, and that was in 2002. And this court has applied that case widely since then in case after case. I would particularly point to Kennedy versus City of Villa Hills and Henry versus City of Flint as relevant cases. Second, Mr. Wood did use coarse language and insults. That is true. But it was not just meaningless invective. So for example, he shouted, quote, the United States Constitution doesn't apply at the Clark County Fairgrounds people. He called the officers, quote, thugs with guns that don't uphold the United States Constitution. Fighting words is meant to cover speech that, as the Supreme Court put it, is not essential to the exposition of ideas. But criticism of public officials, including police, and also, I would submit, including quasi-state officials like Mr. Blair, the fair director, that criticism is a fundamental First Amendment value. It's at the opposite end of the spectrum. And few, if any, substantive criticisms of public officials should be fighting words, because they inherently have higher value, coarse though they may be. Counsel, what you say is true, but it's somewhat in isolation, because the actual arrest in this case followed some other things, including with the owner of the fairgrounds and the departure from the fairgrounds. And that's when the arrest actually took place. So it's not like he's standing in the lobby of a police station, a public building. He's on somebody else's property and has been asked to leave. And he was leaving, Your Honor. That was the context of his speech. He was asked to leave. He left and was engaging in further conversation as he was leaving. The arrest was based, apparently, on the content of his speech. Certainly, there was no other act that he may have committed that would have given probable cause to arrest. I thought he was also arrested for obstructing the police by failing to obey their orders, that they ordered him to exit the rear exit or the front exit of the fairgrounds. And he refused their directive to exit the front entrance. And he said, no, I'm insisting that I exit the rear entrance. And isn't that a basis for the probable cause to arrest him? And why isn't that separate from the claim that he's arrested by speech or for his speech? I would submit that that does not provide probable cause to arrest him, Your Honor. He was asked to leave the fairgrounds and he complied with that instruction and then was leaving. But he's going the wrong way. He's going the long way. And don't they have a right to have him exit the shortest distance from the fairgrounds? I would say that nothing about that meets the elements of any offense. This court observed in Dede v. Sheeler that obstructing official business requires an affirmative act with the purpose of obstructing the officers. And in that case, merely not complying with an order to depart was not sufficient to meet the elements of that. It did not provide probable cause, as Judge Gibbons observes when she wrote the opinion. And disorderly cause is similar. There must be an affirmative act that is physically offensive or creates a risk of physical harm. That does not even arguably exist here. Again, it was never less than clear that Mr. Wood was departing as he was instructed to do. He asked, does it matter which entrance I came in? And they said, yes, it does. And he said, I came in the rear entrance. So I'm not disputing that he did not follow that one detailed instruction, but that would not provide probable cause to arrest, which leaves us with his speech. And that is protected speech, which cannot itself be the basis of probable cause. And I see I'm running short on time. I want to get to my second point as well. But I've spoken about the context of the speech. My second concern is the district court's deference to state decisions, rather than to the Supreme Court's precedent and this court. For probable cause, there are two independent questions. Did Mr. Wood violate the letter of the statute? And was his speech unprotected by the First Amendment? If the answer to either of those is no, then there could not be probable cause. Here, the district court, rather than looking to the extensive body of case law from the Supreme Court and from this court, Sandel versus Larian, Green versus Barber, Kennedy versus Villa Hills, and any number of others, essentially looked solely to state law disorderly conduct cases, regardless of whether those cases actually contained any express First Amendment. The magistrate's report and recommendation got this right by looking to the governing federal law. But even with that analysis in front of it, the district court ignored that entire body of federal jurisprudence. And it appeared to have assumed that the First Amendment analysis was incorporated into the disorderly conduct law. The problem is that's not the case. As we've explained in our briefing, Cincinnati versus Carlin, Ohio versus Wood, several state cases provide that even a single instance of a profane insult to an officer could be disorderly conduct. That's irreconcilable with this court's decisions. Thank you, your honors. Good morning, and may it please the court. My name is Sarah Coulter, and I'm with the First Amendment Clinic at Case Western Reserve University School of Law, here representing the appellant Michael A. Wood. This court should reverse the district court's decision and remand for further proceedings for two main reasons. First, not only did the district court rely on state law for its substantive First Amendment analysis, as Mr. Carey has explained, it also wrongly deferred to that state court analysis for the purposes of qualified immunity. And second, there are genuine issues of material fact as to Mr. Wood's First Amendment retaliation claim, making summary judgment improper, especially when viewed in the light that Mr. Wood was a pro se litigant in the majority of the district court proceedings. What are some of the disputed facts? Your honor, I would point you to three specific facts that establish a genuine issue of material fact that should go to a jury. First is Mr. Blair's conduct as the deputies were able to see it when he approached Mr. Wood to ask him to leave. Mr. Wood states in his deposition that Mr. Blair shouted, where is this shirt? Where is the shirt? I want to see the shirt. And also, your honors can see for yourselves in Deputy Yates's body camera footage that Mr. Blair circles around Mr. Wood and Mr. Wood even moves his backpack so that Mr. Blair can see the back of his shirt. And then a few seconds later, your honor, after he's asked to leave, Mr. Blair says, you change shirts. Second, your honors, I would point you to the incident report. What's the issue? What's the issue of fact there? That's all on video. What's the factual question? The factual issue, your honor, is whether Mr. Wood's t-shirt was the motivating or substantial factor for the adverse actions that the deputies took in this case. The adverse actions here included surrounding him and escorting him off the presence, the premises, a public place that he had paid to enter because of the content of his t-shirt. If Mr. Blair was asking Mr. Wood to leave because of the content of his t-shirt, that is impermissible viewpoint. The officers are not responsible for Mr. Blair's actions, are they? They're not, your honor, but they are responsible for their own violations. So Mr. Blair's motivations, I don't see how that's relevant. Blair, as the executive director of the fairgrounds, has revoked your client's license to be on the fairgrounds and he says that Woods is now trespassing on the fairground property and I therefore ask you to remove him. And the reasons that he's revoked the license, I don't think are really relevant as to the officer's conduct, whether or not they decide to remove the alleged trespasser. First, I would note that asking him to leave cannot be done for an arbitrary or capricious Well, you're not suing the fairgrounds. You're not suing the county. I mean, you're suing the officers here and that's a whole different issue. I mean, you may have a lawsuit against the agricultural society for removing him from the fairgrounds, but that's a whole different matter than whether the officers have qualified immunity for carrying out the property owner's request that the alleged trespasser be removed. That's all. So two points on that, your honor. The first is that I would direct your attention to the incident report that's attached to Deputy Troutman's affidavit, which is at ECF 31-2, page ID 222, where the shirt is actually listed as evidence in the arrest in this case. And second, your honor, you brought up qualified immunity here. It is clearly established in the Sixth Circuit that officers cannot base probable cause determinations on protected speech. As Mr. Carey has explained, that has been the law of the land in the Sixth Circuit, dating back all the way to 1997 with Sandul v. Larian. This court has provided instructions for how to determine whether a right in question was clearly established on the day in question. Courts should consider decisions from the United States Supreme Court, the Sixth Circuit Court of Appeals, or finally other circuit courts. But that's not what the It instead look to state court decisions that are irreconcilable with that Sixth Circuit decision, those Sixth Circuit, that Sixth Circuit precedent that Mr. Carey has spoken about already. The reach and limits of the First Amendment is not a question of state law. Instead, this is an issue where the federal courts are supreme and the federal court's interpretation of the federal constitution is going to be the controlling factor for the qualified immunity analysis. The Supreme Court stated in Harlow v. Fitzgerald that a reasonably competent public official is presumed to know the law governing his or her conduct. Here- Let's talk about that for a minute because I have to say I've been surprised how far the has gone in some of these police qualified immunity cases in terms of saying that the fact situation has to be one that quite clearly has been previously decided and the officers should know about it. Now the problem I had with your argument was the same problem I had with co-counsel's argument. You've cut this up into little pieces and when you analyze each of the little pieces, you can make a convincing case. Let's take the shirt for example. The shirt was introduced into evidence but the shirt was relevant in the sense that not because of what it said but because it generated some complaints from other people. It called attention to this fellow. He was said to also be taking pictures of children that he wasn't authorized to do and it was all part and parcel of what the gentleman who was in charge had to consider in terms of asking him to leave. Every step of the way he was digging his heels in on all of this. Don't you have to look at the totality of the circumstances to see if the officers would be um now I don't want to say authorized but what would understand under the law why the officers would move forward under these circumstances and that they wouldn't be on notice that this kind of fact situation had been decided by the Supreme Court? Your honor, I see my time has expired. May I briefly answer your question? Sure. Great answer. Thank you. So your honor, to start with the t-shirt is clearly protected under the Supreme Court precedent in Cohen versus California and and your concern about there not being a specific factual case on point I would say is belied somewhat by Sixth Circuit cases including Barnes versus Wright where in that case the person the arrestee was cussing and ranting and raving and the district court or I'm sorry the Sixth Circuit there said that his comments did not rise to the level of fighting words and then finally your honors I would just point to this court's decision in Cruz Golias where even though there was not a factually identical case on point the the Sixth Circuit's precedent established clear and specific principles that answer the question in this case. So here there is cases enough there are enough cases in the Sixth Circuit that gets to the heart of the matter and clearly establish the principles at issue here. Thank you. Are you familiar of the two recent U.S. Supreme Court cases that have summarily reversed denials of qualified immunity and particularly the statements in those cases that we look to Supreme Court cases to determine whether the right is clearly established and even if we were to allow parties to review circuit court cases then anyway there's a statement in there that kind of implies the Supreme Court is looking at their own cases. What do you what do you make of that? Just just for the interest of it I know it's I know it's dicta and it's not but you know sometimes we file the dicta this Supreme Court too so what do you make of that statement? Yes your honor so my my first response is that even the fact that we're engaging in this conversation shows that it would be improper to rely on state court decisions to establish. Okay sure. But to answer to answer your specific question your honor I would say that Houston versus Hill makes this clear that that police officers are expected to endure some course criticisms your honor and the first amendment protects such significant amounts of verbal criticism and challenge directed at police officers. The Houston court went out went on to note that the freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one of principal characteristics by which we distinguish a free nation from a police state and so even the Supreme Court precedent would point to the conclusion that Mr. Wood's statements were protected speech and cannot therefore serve as probable cause. Thank you. Thank you. All right you may proceed. Morning may it please the court my name is Andrew Yasowitz and I represent the Clark County deputies in this matter. I want to start Judge Guy with your last point about whether the law was clearly established so qualified immunity has two prongs whether there was a constitutional violation and whether the constitutional violation was clearly established and the court can can handle either prong in any in any order. So I'll start with the clearly established. As you noted the Supreme Court has been very clear that the law must in the fourth amendment context the law cannot be defined at a high level of generality. That's what the magistrate judge did. She defined it at a high level of generality e.g. there's a right to free speech in this country. Nobody disagrees with that. The burden is on the plaintiff to provide a case with similar circumstances. The plaintiff has not done that in this case. Leaving aside whether or not Sixth Circuit law can clearly establish anything and I take your point Judge Griffin that the Supreme Court has questioned that but for our purposes even if we look at the Sixth Circuit case law that they've cited it doesn't clearly establish a constitutional violation in this case because the facts aren't at all similar. They rely on Sandal v Larian. That was a case in which a person in a truck driving past an abortion protest shouted an expletive out the window and raised his middle finger and the court said that that was not fighting words. Green v. Barber was the encounter at a police station where there was a single expletive being told to an officer. Cruz Gullias v. Minard which Ms. Coulter just referenced one wasn't decided until after the facts of this case so it can't clearly establish the law at the time of this incident but even so that was an incident in which during the traffic stop a motorist who was driving away raised her middle finger at the officer and then the officer got mad and pulled her over again and the Sixth Circuit said that that was not gesturing with the middle finger was not fighting words. None of those cases are remotely similar to the facts here. What those cases establish is that a single expletive towards an officer is not going to be fighting words. Do you think that the more the individual talks the more justified the more expressive conduct there is the more justified the arrest? Well yes. What case tells us that? Sure I go I would go back to even if you look at their reference to Houston v. Hill I don't disagree that a police officer must endure a significant amount of verbal criticism and in this case the officers did endure a significant amount of verbal criticism but at some point it crosses the line from you know mere criticism to fighting words and to personal insults. What is it here that changed the tenor of the conversation from just obnoxious mouthing off to fighting words? Thank you that's a great question what changes the tenor here is when the when the language becomes personal and directly insulting. Well is there is there a case that makes the different makes a differentiation between general criticism of police and insulting to a particular officer? Yes Chaplinsky v. New Hampshire so in Chaplinsky v. New Hampshire which was the lead so if you're obnoxious about the police in general the officers have to take it but then if you criticize one officer in particular there's probable cause to arrest you. I think the distinction is more if you are yeah if you are versus directly insulting the officer you are an effing thief that's the difference and that's what Chaplinsky talks about. Resort to epithets or personal abuse is not safeguarded by the constitution and the circumstances matter. Is it face to face? Is it said with a disarming smile? In Chaplinsky you know calling a marshal who's a law enforcement officer a damn racketeer and damn fascist we're determined to be epithets likely to provoke an average person to retaliation. Now I understand. Well Mr. Wood didn't didn't say anything like that though. Oh he certainly he said worse than that. No I mean he called I mean he he had some choice words for the fellow who'd served in the air force. I mean he said some things that were insulting but he didn't include that he said called him thugs but he did not raise it to the level of criminal activity did he? Oh I think he absolutely did. So he he did more if he had just called them thugs then I would agree with with the appellants but that's not what he did. He called them bitch-ass fucking pigs, dirty rat bastards. He got into Deputy Steiger's face, got into her face and called her a fucking thing. He got into Deputy Johnson's face when he was asked to leave through the front entrance and said that's your fucking fat ass problem mother fucker. He called them pussies. He called Deputy Shaw a motherfucker. You know it's interesting and and that's only to the officers. You know I understand that the officers might be held and have to held to a different standard but then he also called Blair who's a civilian a motherfucker and a fucking fly boy. That if there is a raised level of you know abusive speech that officers have to take, Mr. Blair doesn't have to take it. He's not a police officer. Well Mr. Blair it's a little unclear to me what Mr. Blair's status is. He's not a defendant in the case. That's correct he's not. But it appears that I mean what sort of entity owns the fair and is there any evidence about that in the record? There's no evidence about that in the record. The evidence in the record is that Mr. Blair is the executive director of the Clark County Fair. That's the evidence in the record about Mr. Blair. Does the county have an affiliation with the fair? I don't know that it makes much difference. But you've implied he's a private individual and I'm just not sure that you can draw either the inference that he's a private individual or the inference that he's a public official from the record. I don't know what his status vis-a-vis Clark County is. What we've implied is that as the court noted during appellant's argument is that the deputies aren't responsible for for his conduct. If you know early on in the encounter Mr. Blair says that he's going to call an attorney because uh not Mr. Mr. Wood says he's going to call an attorney because Mr. Blair is ordering him to leave the property. That's that's perfectly his right. That's what he could have done. He could have and you know I'm defending the deputies and not Mr. Blair's conduct. There was a conspiracy claim alleged in this case with Mr. Blair and the deputies that was dismissed and it's not part of this appeal. I do want because there's been argument about whether state law applies and what what the applicability of state law is here I want to address that before my time is up. This court has consistently cited to state case law when deciding whether probable cause exists for an arrest. In our brief we cite Harris versus United States which relied on Ohio decisions interpreting arrest resisting arrest and disorderly conduct for the purpose of determining probable cause. Young versus Owens which relied on Ohio case law in Ohio's receiving stolen property statute and more recently in the additional citation that we filed Barrera versus city of Mount Pleasant this court also referenced state case law in that case Michigan case law in making a probable cause determination. But how about whether the speech is protected by first amendment and in the first amendment context don't we look to federal constitutional law rather than Ohio state law? Well we're determining whether you know we are looking at a state offense disorderly conduct and we're determining whether the elements of the Ohio statute have been satisfied but even if they have if the conduct is protected by the first amendment that's a federal issue isn't it is it not rather than a state issue? Well I think that whether the law is clearly established is a federal issue. Well fundamentally this is a lawsuit in which Mr. Woods alleges the violation of a federal constitutional right so I mean you might want to start there. Well in every section 1983 lawsuit the plaintiff is alleging a violation of a federal constitutional right. Which which may well mean that the parameters of the federal constitutional right that the most applicable cases are going to be those that deal with the violations of federal constitutional right correct and those could be in state court but they're most apt to be federal cases. I when you're the federal constitutional right at issue in this case is whether there was probable cause or not for his arrest for a state statute. Ohio courts interpret the boundaries of Ohio's disorderly conduct statute far more often than the sixth circuit or the U.S. Supreme Court does and the case law is that it's the state we look the state that it's inappropriate for I suppose you're not suggesting that it's inappropriate for us to be the determiners of the point at which the state criminal law does not permit a current arrest that is constitutional. I'm not suggesting that at all I think that goes to what what the law you know what the you know the sixth circuit has as I said consistently relied on state court cases to help determine whether there's probable cause it's the federal probable cause standard that controls but that's something different because the standards under for probable cause under state law and federal law could be different a state could have a more restrictive probable cause analysis an arrest could be prohibited by state law but constitutional under federal law state courts might view certain probable cause facts differently than the federal courts so I would agree that the federal problem cost standard applies but in you know you would also agree that the federal first amendment standard do you not sure but I think you can look to state court cases to to find out what the first amendment means no to find out whether there's a reasonable officer could believe that there's probable cause well okay so the way I look at it you can have the elements of the state the state law crime here but on top of that it has to be constitutional that even if all the elements of the Ohio statute have been satisfied there is no probable cause to arrest if it violates the first amendment of the United States Constitution so to determine that second question I think you have to look to federal law rather than state law to find out what the first amendment means don't you I think federal law is a factor but I think you can also look to state law that doesn't doesn't federal law trump state law as to matters of the United States Constitution yes okay and so well I see that my time is up if I can respond if there are no other questions I think we'll well could I could I get an answer to that uh Chuck Gibbons sure I thought his one word was his answer oh I'm sorry I didn't hear you no I I don't know if he hadn't finished I'm happy for him to finish um let me let me let me put it to to the court uh another way um there's nothing in supreme court or sixth circuit law that would tell a deputy to completely ignore state court opinions on how to interpret the disorderly conduct statute um if this court wants to say as that the state court decisions over the last 40 years um from Ohio including a supreme court case from Ohio are wrong um then I think this court can say that but until this court says that these deputies should be entitled to qualified immunity and we would ask you that you affirm the decision of the district court thank you all right you all have one minute for rebuttal I think miss counter yes thank you your honor first judge Gibbons I'd like to direct your attention to footnote three on page 16 of the trial court's decision where they did say that Mr. Wood or Mr. Blair excuse me was a quasi state official and so any criticism of public officials um as noted in Houston and its other side said about fighting words your honors my friend on the other side is attempting to draw a line between when language becomes personal and is directly insulting to officers I would point this court to Kennedy versus city of Villa Hills where the arrestee in that case called the officer a fat slob and insinuated that he broke zoning laws and again your honor that was not enough to constitute fighting words so for these reasons we ask that this court reverse the district court's decision and remand for further proceedings we thank you all for your arguments and we'll consider the case carefully